[Cite as *State v. McOsker*, 2017-Ohio-247.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                    :

    Plaintiff-Appellee,                       :          CASE NO.   CA2016-05-025

                                                 :          O P I N I O N
- vs -                                                          1/23/2017

                                                 :

WILLIAM QUAYSHAUN MCOSKER,      :

    Defendant-Appellant.                   :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015-CR-0370


D. Vincent Faris, Clermont County Prosecuting Attorney, Katherine Terpstra, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 302 East Main Street, Batavia, Ohio 45103, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1}   Defendant-appellant, William Quayshaun McOsker, appeals his conviction for felonious assault following a jury trial in the Clermont County Court of Common Pleas.  For the reasons set forth below, we affirm his conviction.

{¶ 2}   On the evening of June 12, 2015, Devin Trammel co-hosted an outdoor graduation party at 600 Hopewell Road in Felicity, Clermont County, Ohio.  Somewhere

between 30 and 100 people were in attendance at the party, which lasted until the early morning hours of June 13, 2015. Numerous guests, including underage guests, consumed alcohol throughout the night. Appellant and one or two other individuals were the only African-Americans in attendance at the party.

{¶ 3} Appellant and two of his friends arrived at the party sometime before nightfall. Appellant parked his vehicle close to where people were congregating and played music on his stereo for people to enjoy. At some point in the evening, Erik Beckelhymer arrived at the party with some of his friends. Within a few minutes of Beckelhymer's arrival, he engaged in a physical altercation with Trammel. The two men, who were friends, fought for less than two minutes before shaking hands and parting ways.

{¶ 4} Later that evening, a second altercation occurred near where appellant and his friends were standing. Although there is a dispute as to whether Beckelhymer was an active participant in this altercation, all those who witnessed or participated in this fight agree that Beckelhymer was in the area where the fight occurred.[1] During this fight, one of appellant's friends, Nick Hudson, was struck. When appellant went to aid his friend, appellant was "sucker punched" by Michael Wise. Wise attempted to blame Beckelhymer for the punch, asking, "Erik, why did you do that?"

{¶ 5} While this altercation was happening, Trammel believed appellant was "probably scared" and was "pissed off." Trammel heard appellant shout, "I've got a knife. I'll stab you guys. I'll - - I'll kill all of you mother f-----s." Another party-goer, Ridge Ivy, saw appellant pull a knife out of his pocket and say, "I'm going to kill them." The altercation concluded when Beckelhymer and his group of friends left the party. Appellant stayed at the

---

1. At trial, Trammel testified Beckelhymer punched appellant's friend, Nick Hudson. However, Beckelhymer denied that he punched Hudson or anyone else during the second altercation, and his testimony was corroborated by his friend, Anthony Meade.

party, and he and a couple of his friends continued to listen to music near his car.

{¶ 6} About an hour later, Beckelhymer and his friends returned to the party. Beckelhymer became engaged in an argument with Danika Carter, an African-American guest, while she was standing in the vicinity of appellant. Carter accused Beckelhymer of using racial slurs and calling her a "n----r." Beckelhymer denied using racial slurs, but numerous witnesses recalled hearing the slurs being used at the party. At some point during Beckelhymer's and Carter's argument, drinks were thrown. Beckelhymer splashed Carter in her face with his beer.

{¶ 7} Around this time, appellant approached Beckelhymer and tackled him to the ground. Appellant then quickly got up, entered his vehicle with Hudson and another friend, and "peeled out" of the party "like a bat out of hell." Appellant, Hudson, and the third friend claimed they heard gunshots as they drove off, although no other party-goer recalled hearing gunshots. While driving away from the party, Hudson recalled appellant saying, "I stabbed him." Hudson also believed he may have seen appellant throw a knife out the car window.[2] The other passenger in the car did not hear appellant say anything about stabbing anyone or see appellant throw a knife out the window.

{¶ 8} Meanwhile, at the party, Beckelhymer stood up after being tackled by appellant and stated, "I've been stabbed." A couple of guests attempted to tend to Beckelhymer by applying pressure to the upper left side of his abdomen, where internal tissue was protruding from his wound. Beckelhymer was pale and was going in and out of consciousness. A guest called 9-1-1, and emergency personnel were dispatched to the scene. Beckelhymer was air-lifted to a nearby hospital, where he underwent surgery. Beckelhymer's small intestine was punctured in several places and his iliac vein sliced. Beckelhymer's iliac vein was sutured

---

2. Hudson testified at trial that he saw appellant throw a knife out of his car, but then later appeared to contradict himself when he testified that he never saw a knife.

and his appendix and 55 centimeters of his small intestine were removed.

{¶ 9} The Clermont County Sheriff's Office opened an investigation into the stabbing. Investigator Chris Allen spoke with appellant about the events that transpired at the party. Appellant admitted to being involved in a fight, but repeatedly denied stabbing Beckelhymer.

{¶ 10} Appellant was arrested and subsequently indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1) (count one) and 2903.11(A)(2) (count two), felonies of the second degree. Appellant entered a not guilty plea to the charges and a jury trial was held in February 2016. At trial, defense counsel requested that the jury be instructed on the inferior offense of aggravated assault. The trial court denied this request. The jury found appellant guilty on both counts of felonious assault. At sentencing, the trial court determined appellant's convictions were allied offenses and the offenses were merged. Appellant was sentenced to an eight-year prison term on count one.

{¶ 11} Appellant timely appealed his conviction, raising the following as his sole assignment of error:

{¶ 12} THE TRIAL COURT ERRED IN FAILING TO PROVIDE THE JURY WITH AN INSTRUCTION ON THE INFERIOR OFFENSE OF AGGRAVATED ASSAULT.

{¶ 13} In his sole assignment of error, appellant argues the trial court erred when it denied his request for an aggravated assault jury instruction. Appellant contends he presented sufficient evidence of provocation to warrant such an instruction.

{¶ 14} A person is guilty of felonious assault if the person "knowingly * * * [c]ause[s] serious physical harm to another or to another's unborn." R.C. 2903.11(A)(1). A person is guilty of aggravated assault if the person, "while under the influence of sudden passion or in a sudden fit or rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, * * * knowingly * * * [c]ause[s] serious physical harm to another or to another's unborn." R.C. 2903.12(A)(1).

- 4 -

Because the elements of aggravated assault are identical to the elements of felonious assault, except for the additional mitigating element of provocation, aggravated assault is an offense of an inferior degree of felonious assault. *State v. Mack*, 82 Ohio St.3d 198, 200 (1998), citing *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph four of the syllabus.

{¶ 15} "A judge must give an instruction on an inferior degree offense if, 'under any reasonable view of the evidence, it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the * * * inferior offense.'" *State v. Patterson*, 12th Dist. Butler No. CA2001-01-011, 2002 WL 745282, * 10 (Apr. 29, 2002), quoting *State v. Cornett*, 82 Ohio App.3d 624, 631 (12th Dist.1992). "Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault * * * *must* be given." (Emphasis sic.) *Deem*, 40 Ohio St.3d at 211.

{¶ 16} "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Id.* at paragraph five of the syllabus. "In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must [first] be applied." *State v. Shane*, 63 Ohio St.3d 630, 634 (1992). *See also Mack*, 82 Ohio St.3d at 201. Under an objective standard, "[t]he provocation must be 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *State v. Chambers*, 12th Dist. Butler No. CA2004-03-069, 2005-Ohio-1682, ¶ 9, quoting *Shane* at 635. *See also Mack* at 201. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that a defendant was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give the aggravated assault instruction. *Shane* at 634. Where the objective portion of the test is not met, the

court need not conduct a subsequent inquiry into the subjective portion of the test. *Id.*

{¶ 17} However, if the objective standard is met, "the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case 'actually was under the influence of sudden passion or a sudden fit of rage.'" *Mack* at 201, quoting *Shane* at 634. Under this subjective component, the "'emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * *' must be considered." *Shane* at 634, quoting *Deem* at paragraph five of the syllabus.

{¶ 18} In the present case, we find that the trial court did not err in denying appellant's request for an aggravated assault jury instruction. The evidence of provocation presented by appellant was insufficient, as a matter of law, to support a conviction on aggravated assault. The totality of the evidence presented at trial, even when viewed in a light most favorable to appellant, did not raise a possibility of serious provocation occasioned by Beckelhymer.

{¶ 19} To be reasonably sufficient provocation, the provocation "must be *occasioned by the victim*." (Emphasis sic.) *Shane* at 637. Here, the only evidence presented of provocation by Beckelhymer were his actions in engaging in fights with various party goers throughout the evening and his use of racial slurs while in proximity to appellant. Although Beckelhymer's use of racial slurs is deplorable, "[i]t is well-established that 'words alone will not constitute reasonabl[y] sufficient provocation to incite the use of deadly force in most situations.'" *State v. Gray*, 12th Dist. Butler No. CA2010-03-064, 2011-Ohio-666, ¶ 37, quoting *Shane* at 637.

{¶ 20} Further, Beckelhymer's participation in various fights while at the party does not constitute reasonably sufficient provocation to incite appellant's use of deadly force. There is nothing in the record indicating appellant was involved in Beckelhymer's first fight with Trammel. As for the second fight, when appellant was sucker punched by Wise and the punch blamed on Beckelhymer, this fight took place approximately an hour before the third

fight occurred. The supreme court has recognized that "past incidents * * * do not satisfy the test for reasonably sufficient provocation where there is sufficient time for cooling off." *Mack*, 82 Ohio St.3d at 201, citing *State v. Huertas*, 51 Ohio St.3d 22, 31-32 (1990). Thus, even if appellant believed Beckelhymer had been the individual who punched him, the punch does not rise to the level of sufficient provocation as appellant had an hour to "cool off" from the second fight while Beckelhymer was gone from the party. Additionally, Beckelhymer's actions upon returning to the party, wherein he directed racial slurs at someone other than appellant and splashed another party guest in the face with a beer, was not sufficient provocation to arouse the passions of an ordinary person beyond the power of his control. Appellant, therefore, failed to meet the objective component of the test.

{¶ 21} Appellant also failed to introduce evidence satisfying the subjective component of the test. As appellant did not testify at trial, the only evidence before the court about his mental and emotional state at the time of the stabbing was derived from his statement to Investigator Allen and the observations of those who witnessed the incident. Although there was some testimony that appellant was "probably scared" and was "pissed off" and "agitated" throughout the night, this testimony does not demonstrate that appellant "actually was under the influence of sudden passion or a sudden fit of rage" at the time he assaulted Beckelhymer. *Shane*, 63 Ohio St.3d 634. When talking to Investigator Allen, appellant did not claim that he was provoked into stabbing Beckelhymer or that he acted out of a fit of rage or under extreme stress. Rather, appellant maintained his innocence, repeatedly denying that he stabbed anyone at the party.

{¶ 22} Therefore, based on the record before us, we conclude that the trial court did not err in denying appellant's request for an aggravated assault jury instruction. The evidence of provocation presented by appellant was insufficient, as a matter of law, to support a conviction on aggravated assault. Appellant's sole assignment of error is

overruled.

**{¶ 23}** Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.